WILLIAM J. ANGLIM *vs.* SEARS-ROEBUCK SHOE FACTORIES.

Suffolk.    December 7, 1925. — March 30, 1926.

Present: BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Corporation,* Officers and agents.    *Agency,* Scope of authority.    *Contract,* What constitutes, Construction, Performance and breach.

The manager and superintendent of a factory in Cambridge, operated by a corporation with its principal office in Illinois and with other factories in other parts of the United States, may be found to be authorized to make a contract in writing with one in control of land over which runs a spur track connecting with the railroad which will give the corporation the use of the spur track and will be of benefit to it.

A letter, addressed to a corporation and containing an offer as the basis of a contract for the use of a spur track being constructed by the writer of the letter, was signed by the addressee by placing its name above that of the writer. *Held,* that the transaction in effect was a proposal by the writer which the addressee accepted, and that the proposal and acceptance constituted the contract between the parties; and that it was immaterial that the addressee's signature preceded that of the writer.

The contract above described stated: "It is understood that the purpose and the intent of this agreement is that the . . . [defendant] shall have immediate access on the completion of these presents." At the time of the signing, the track was unfit for service and unsafe for opera-

tion, and the railroad company had declined to move cars over it. *Held*, that the writer of the letter was bound by the contract which was definite and not general, that the physical condition of the track, even though obvious to the addressee's agent, could not vary its terms, and that a finding for the plaintiff was not required as a matter of law.

CONTRACT, with a declaration described in the opinion. Writ dated May 19, 1916.

In the Superior Court, the action was referred to an auditor, and afterwards was heard by *McLaughlin*, J., without a jury. Material facts found by the auditor and rulings by the trial judge are described in the opinion. The judge found for the defendant. The plaintiff alleged exceptions.

*S. P. Hall,* (*G. W. Folsom, Jr.,* with him,) for the plaintiff.

*M. M. Johnson,* (*J. W. Black, Jr.,* with him,) for the defendant.

BRALEY, J. This is an action of contract in two counts alleged to be for the same cause of action. The first is for an alleged breach of a contract in writing reading as follows:

"Cambridge, Mass., March 23, 1914.

Mr. S. M. Longmire
Sears-Roebuck Shoe Factories
Cambridge, Mass.
Dear Sir:

In compliance with your request and in conformance of our discussion of this morning, at your office, I hereby agree to give License for the use of Spur Track on Purrington St., to your concern, for use for their purposes, for the sum of Seventy-five Hundred Dollars ($7500.00). Such proportion of said sum as is required to complete payment to the New York Central R. R. Co., Boston & Albany Branch for the construction and completion of said Spur and said connection, will be paid over to them simultaneously and the balance of the $7500.00 will be paid to me at that time.

I further agree to reimburse you from full payments received from the next track connections saving and excepting the plant of the Neapolitan Ice Cream Company, and the plant of the Elliott Company, to the extent of $3750.00.

It is understood that the purpose and the intent of this agreement is that the Sears-Roebuck Shoe Factories shall have immediate access on the completion of these presents.

Yours very truly,

(Signed)                              Sears-Roebuck Shoe Factories.

William J. Anglim."

The second count is for breach of an oral contract "as is evidenced by the writing." The answer is a general denial with an averment that the plaintiff is barred by the statute of frauds. The case was referred to an auditor whose findings as stipulated by the parties were to be final. Upon the coming in of his report there was a hearing by a judge sitting without a jury, at which the only additional evidence was a certain copy of the permit to which the auditor referred in his report. It is not contended that the permit materially affected the auditor's conclusions. The plaintiff asked for these rulings: "First, upon all the facts, the defendant did authorize the making of the contract with the plaintiff. Second, upon all the facts, the defendant is bound as a party to a contract with the plaintiff, as alleged in plaintiff's declaration. Third, upon all the facts, the plaintiff is entitled to recover." The requests were not granted, and, the judge having found for the defendant, the questions raised by these requests are before us.

The defendant, a foreign corporation with its principal office in Chicago, Illinois, had among other factories a factory located in the city of Cambridge in this Commonwealth. The factory, besides a front entrance, had a rear entrance partly on a private way known as Purrington Street. It was not used for the manufacture of shoes but for the cutting of sole leather and the sorting of upper leather, which were shipped to other factories of the company to be made into shoes. The plaintiff according to the report was granted a franchise permit by the city June 18, 1910, and January 22, 1912, for the construction of a spur track from the tracks of the Boston and Albany Railroad through and upon the land referred to as Purrington Street in the report. It is found that on June 18, 1910, the legal title to the land comprising Purrington Street was in the plaintiff and two other

persons as trustees of the "Charles River Building Trust"; that on December 5, 1910, the trustees conveyed to George Purrington, Jr., a tract of land including Purrington Street, taking back from him an agreement which made no change in the record title.   The plaintiff, however, notwithstanding the condition of the title, entered on April 25, 1912, into a contract with the New York Central and Hudson River Railroad Company, lessee of the Boston and Albany Railroad Company, to build a spur track, which if built would pass by the defendant's factory on the Purrington Street side.   The entire track, as shown by a plan referred to in the report, began at a point near Talbot Street where it connected with the tracks of the Boston and Albany Railroad, Grand Junction Branch, and then passed northerly and northeasterly through Anglim Street, Waverly Street and Purrington Street to Cross Street.   While the railroad company began the construction of the track in January, 1913, and continued it until about August 1, 1913, when work ceased, and there was no further construction until the latter part of 1918 or early in 1919, the reasons for the delay being the plaintiff's failure to pay by monthly instalments, it is unnecessary to decide whether monthly payments were due under the plaintiff's contract with the railroad company as the railroad company claimed, or whether, as the plaintiff contended, no payment was to be made until the work had been completed.   The auditor finds that on March 23, 1914, the track was unfit for service and unsafe for operation.   At that time, which is the date of the alleged contract, the defendant's vice-president had the active direction of the company's affairs, while Frank A. Case, an employee with headquarters in Chicago, had general charge of all its shoe factories and visited the factory in question once in three or four months.   S. W. Longmire and one McDonald were employees at the Cambridge factory, Longmire being manager or superintendent and McDonald the cost accountant and auditor.   There had been prior conversations with Case, who said to the plaintiff in substance, that "we" would like to use the spur track for the shipment in and out of car load lots of freight and do away with trucking charges, and asked what arrangements could

be made for using the track.  Case asked the plaintiff to name a price.  But no further negotiations resulted.  A petition meanwhile had been filed, signed by several parties among whom was the defendant "per S. W. Longmire," asking the board of aldermen of the city to revoke the permit granting to the plaintiff the right to construct and operate the spur track, and McDonald appeared at the hearing in favor of revocation because the plaintiff had made no proposition to Longmire, and the use of the spur track would be very beneficial to the factory in the saving of expense for trucking.  It was under the foregoing circumstances that the plaintiff and McDonald met on their way from the hearing and went to the office of the factory where they found Longmire.  A discussion followed in which the plaintiff outlined his willingness to make an agreement which was afterwards embodied in the alleged contract in writing.  At the suggestion of Longmire, the plaintiff dictated to a stenographer his oral statements and his proposed agreement with the defendant, the terms of which, having been put in typewriting, were read by the plaintiff, McDonald, and Longmire, who said, "You sign that up Mac, I have got to get away," and left the office.  The plaintiff signed and McDonald then wrote the words, "Sears Roebuck Shoe Factories."

It is contended by the defendant that Longmire had no authority to bind the factory.  But Longmire was the manager and superintendent of the factory, the business of which would be benefited if the right to use the spur track could be acquired.  The plaintiff had the right to rely on Longmire's ostensible powers as being his real powers for reasons sufficiently stated in *Gerrish Dredging Co.* v. *Bethlehem Shipbuilding Corp.* 247 Mass. 162, 167.  It follows as matter of law on the auditor's findings, that the defendant was bound by the action of Longmire.

It is immaterial that the defendant's signature precedes the signature of the plaintiff.  The transaction in effect was a proposal by the plaintiff which the defendant accepted, and the proposal and acceptance constituted the contract between the parties.  *Metropolitan Coal Co.* v. *Boutell Transportation & Towing Co.* 185 Mass. 391.

The plaintiff agreed to give a license to the defendant for the use of the track on Purrington Street for their purposes for $7,500, "Such proportion of said sum as is required to complete payment to the New York Central R. R. Co., Boston & Albany Branch for the construction and completion of said Spur and said connection, will be paid over to them simultaneously and the balance . . . will be paid to me at that time." The auditor finds that the plaintiff has never given or tendered any license, and that "as the situation existed" at the date of the contract, the plaintiff could not give the defendant a license which would enable it "to move or bring about the moving of cars over the track in question." But the question, whether any money was payable by the defendant until a license had been given or tendered, need not be considered. It is not raised. The plaintiff also stipulated, "It is understood that the purpose and intent of this agreement is that the Sears-Roebuck Shoe Factories shall have immediate access on the completion of these presents." It cannot be read out of the contract. The auditor finds, that at the date of the contract while the road-bed of the track was rough graded, and the ties were laid and the rails spiked to the ties for its entire length, the track was obstructed by a fence projecting into Waverly Street over the location, which was so near the track that cars could not be run over it unless the fence was removed. He also finds, that "the track was unfit for service and unsafe for operation," and that the railroad company had declined to move cars over it. The plaintiff was bound by the contract, which is definite and not general, and the physical condition of the track in Purrington Street, which the plaintiff argues was obvious to the defendant's agent, cannot vary its terms. *DeFriest* v. *Bradley,* 192 Mass. 346.

It is plain that the plaintiff has not been prejudiced by the failure to give the first request, and, having failed to prove his own performance of the contract, the second and third requests could not have been given. *Hapgood* v. *Shaw,* 105 Mass. 276, 279. *Bryne* v. *Dorey,* 221 Mass. 399, 404, 405.

*Exceptions overruled.*